IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BIG GAMES MANAGEMENT, LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:23-CV-2214-S |
| | § | |
| BESPOKE PLUSH, LLC, | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

On June 28, 2024, Plaintiff Big Games Management, LLC ("Big Games")

filed its Motion for Default Judgment Against Defendant Bespoke Plush, LLC

("Bespoke").  (Dkt. No. 18 ("Mot.").)  Bespoke has not appeared in this action and

did not file a response.  On August 26, 2024, United States District Judge Karen

Gren Scholer referred the motion to the undersigned magistrate judge for a hearing,

if necessary, and for recommendation.  (*See* Dkt. No. 20.)  Having considered the

motion, the undersigned recommends that the motion be **GRANTED**.

## I. BACKGROUND

Plaintiff Big Games, which principally operates in Texas, is part of a company

structure that creates video game content for the platform Roblox.  (Dkt. No. 1

("Compl.") ¶¶ 1, 6.)  One source of revenue for the company is its sale of stuffed

animal "plushies" depicting characters it creates and adds to the video game content.

1

(*Id.* ¶ 8.)  Customers who buy a plushy also receive a code that can be redeemed in the video game to unlock that character for use in the game.  (*Id.* ¶¶ 9-10.)  Big Games markets the plushies as collectibles.  (*Id.* ¶ 15.)

In December 2022, Big Games arranged to have its plushies manufactured by Bespoke, a Delaware LLC operating in India.  (*Id.* ¶¶ 2, 11.)  The arrangement required Big Games to make full payment for orders before Bespoke would begin to fulfill them.  (*Id.* ¶ 13.)  Big Games soon voiced concerns to Bespoke about quality issues when the items did not meet its expectations.  (*Id.* ¶¶ 14, 16.)

Big Games paused its orders from Bespoke in May 2023 to investigate and remedy the quality issues and, a few weeks later, decided to stop using Bespoke to manufacture its plushies.  (Compl. ¶¶ 17, 18.)  Big Games asked for a refund from Bespoke.  (*Id.* ¶ 19.)  After Bespoke advised that it had already used all of the money it had been paid, Big Games asked Bespoke to send all of the materials and manufactured products to Big Games.  (*Id.* ¶¶ 20-21.)  Bespoke did not honor that request and instead sought to persuade Big Games to resume their working relationship.  (*Id.* ¶¶ 22-23.)

According to Big Games, once it became apparent that Big Games had no interest in resuming the companies' working relationship, Bespoke began threatening to sell the plushies it had manufactured on its own.  (*Id.* ¶ 25.)  Big Games warned against it, advising that it would constitute copyright infringement, but Bespoke responded that it had "no other choice."  (*Id.* ¶ 26.)

Big Games alleges that Bespoke and Chaitanya Krishna Chivukula,[1] a person associated with Bespoke, created a social media post accusing Big Games of fraud and criticizing one of its employees as racist. (Compl. ¶ 27.) On September 14, 2023, Bespoke posted plushies for sale on the Shopify platform that were derivative a Lamb character belonging to Big Games. (*Id.* ¶ 29.) Bespoke included in the title "NO CODES/NO COMPANION," signifying that the item did not have the code that would provide access to an in-game character like one would get by purchasing the item from Big Games. (*Id.* ¶¶ 30-31.)

Big Games contacted Shopify to have it remove Bespoke's ad as an infringing product, but Bespoke asked Shopify to resume its ad and submitted a sworn statement that it believed the removal was the result of a mistake or misidentification of the content. (*Id.* ¶¶ 32-34.) On September 25, 2023, Shopify reposted Bespoke's ad for the plushies. (*Id.* ¶ 36.)

On October 5, 2023, Big Games filed this action against Bespoke alleging that Bespoke infringed its copyright for the "Lamb" character in its video game. (Compl. ¶¶ 37-42.) Big Games alleges that photographs of Lamb posted on Bespoke's website and the plushies it manufactured and sold were derivative works of Big Games's copyrighted material. (*Id.* ¶¶ 43-47.)

---

[1] Big Games included Chivukula as a defendant in the complaint but, on May 7, 2024, the Court dismissed claims against Chivukula without prejudice under Fed. R. Civ. P. 4(m) based on Big Games's failure serve him. (Dkt. No. 13.)

Big Games asserts a claim for copyright infringement under 17 U.S.C. § 501 and, in its complaint, requested statutory damages, costs, attorney's fees, and injunctive relief. (*Id.* ¶¶ 50-53.) The docket shows that Bespoke was served with summons and a copy of the complaint on January 17, 2024, when a process server personally delivered the documents to a representative at Legalinc Corporate Services, Inc., Bespoke's authorized agent in Delaware. (Dkt. No. 5.) Bespoke has not appeared in this action. The Clerk of Court entered a default against Bespoke on April 12, 2024. (Dkt. No. 12.) Big Games moves for a default judgment.

## II. LEGAL STANDARDS

Fed. R. Civ. P. 55 (b)(2) governs the entry of a default judgment. A default judgment is available to a plaintiff that demonstrates the following: (1) the defendant was served with a summons and the complaint, and a default was entered because the defendant failed to appear; (2) the defendant is not a minor or an incompetent person; (3) the defendant is not in the military or subject to the Soldiers and Sailors Relief Act of 1940, 50 U.S.C. § 3931; and (4) if the defendant appeared in the case, the defendant was provided with notice of the default judgment application at least three days before the hearing. *See Arch Ins. Co. v. WM Masters & Assocs., Inc.*, 3:12-CV-2092-M, 2013 WL 145502, at *2 (N.D. Tex. Jan. 14, 2013) (citing *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1070 (D. Ariz. 2006)). In addition, the plaintiff "must make a prima facie showing of jurisdiction." *TFHSP, LLC Series 10147 v. U.S. Bank Nat'l Ass'n*, 3:14-CV-2589-M-BN, 2016 WL 2856006, at *2 (N.D.

Tex. Apr. 18, 2016) (citing *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242

F.3d 322, 325 (5th Cir. 2001)).

      The Fifth Circuit has set out a three-step process for a plaintiff seeking default

judgment: (1) default by the defendant; (2) entry of default by the Clerk; and (3) entry

of a default judgment by the district court.  *See New York Life Ins. Co. v. Brown*, 84

F.3d 137, 141 (5th Cir. 1996); *see also J & J Sports Prods., Inc. v. Morelia Mexican Rest.,*

*Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015).  A default occurs when a defendant

has failed to plead or otherwise respond to the complaint within the time required by

the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 55(a); *PharMerica Corp. v.*

*Paragon Healthcare Grp., LLC*, No. 2:19-CV-00196, 2021 WL 9274561, at *2 (N.D.

Tex. Aug. 20, 2021).

      "'Default judgments are a drastic remedy, not favored by the Federal Rules

and resorted to by courts only in extreme situations.'"  *Lewis v. Lynn*, 236 F.3d 766,

767 (5th Cir. 2001) (quoting *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874

F.2d 274, 276 (5th Cir. 1989)); *see also Arch Ins. Co.*, 2013 WL 145502, at *2 (citing

*Rogers v. Hartford Life & Acc. Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999) (observing the

Fifth Circuit's general disfavor of default judgments and preference to resolve cases

on their merits).  But this policy is "counterbalanced by considerations of social

goals, justice, and expediency, a weighing process [that] lies largely within the

domain of the trial judge's discretion."  *Rogers*, 167 F.3d at 936 (quoting *Pelican Prod.*

*Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted));

*see also Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

"A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). "There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Only well-pleaded facts, not conclusions of law, are presumed to be true. *Id.* Default judgment "should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement." *Mason & Hanger-Silas Mason Co. v. Metal Trades Council of Amarillo, Tex. & Vicinity, AFL-CIO*, 726 F.2d 166, 168 (5th Cir. 1984). A defaulting defendant is deemed to admit all well-pleaded facts in the plaintiff's complaint, but not facts that are not well pled or conclusions of law. *Nishimatsu Const. Co.*, 515 F.2d at 1206.

Courts have developed a three-part analysis to determine whether to enter a default judgment against a defendant. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). First, in assessing whether the entry of a default judgment is procedurally warranted, courts consider several factors, including: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court

6

would think itself obliged to set aside the default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Second, courts assess the substantive merit of the plaintiff's pleadings to determine whether there is a sufficient factual basis for default judgment. *See Nishimatsu Const. Co.*, 515 F.2d at 1206 (finding that a plaintiff must plead sufficient facts to show it is entitled to relief). Third, courts determine what form of relief, if any, the plaintiff should receive. *See 1998 Freightliner*, 548 F. Supp. 2d at 384.

## III. ANALYSIS

To assess whether there has been a default, the undersigned first considers whether Big Games has properly served Bespoke to require it to have appeared in this action. Federal Rule of Civil Procedure 4(h) describes the process for serving a limited liability company such as Bespoke. One method of service under that rule is by delivering the summons and complaint to "an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant[.]" Fed. R. Civ. P. 4(h)(1)(B).

Another available method is to perfect service under Texas law through Fed. R. Civ. P. 4(h)(1)(A) and 4(e). Texas law, however, requires "strict compliance with the rules for service of process." *Stancu v. HRI Lodging/Hilton Garden Inn*, 3:23-CV-2566-K-BN, 2024 WL 3461927, at *4 (N.D. Tex. May 13, 2024) (internal quotation marks omitted), *adopted*, 2024 WL 3462365 (N.D. Tex. July 18, 2024). Under Texas Rule of Civil Procedure 106(a), a citation may be validly served by personally

7

delivering it to the defendant. But, as a corporate entity, Bespoke "is not a person capable of accepting process on its own behalf, and it therefore must be served through an agent." *Id.* at \*5 (quoting *Joe Hand Promotions, Inc. v. Deuce's Rockhouse LLC*, No. EP-17-CV-116-DCG, 2017 WL 2591812, at \*1 (W.D. Tex. June 14, 2017)).

Big Games filed a return of service showing that a process server delivered the summons and complaint to Legalinc Corporate Services, LLC, in Middletown, Delaware, on January 17, 2024. (Dkt. No. 5.) The affidavit states that Legalinc "is authorized by appointment or by law to receive service of process for Bespoke Plush LLC." (*Id.*) Big Games does not specify whether Legalinc's authorization to accept service is granted by statute and, if so, whether the statute also requires mailing the complaint and summons to the defendant. It is therefore unclear whether Big Games accomplished service under Rule 4(h). Under Texas law, however, Big Games has validly served Bespoke by personally delivering the summons and complaint to Bespoke's registered agent. *See Liberty Burger Prop. Co. v. Liberty Rebellion Restaurant Group, LLC*, No. 3:22-CV-085-E, 2023 WL 349790, at \*2-3 (N.D. Tex. Jan. 20, 2023).

Despite having received notice of this lawsuit and the duty to answer Big Games's complaint, the record shows that Bespoke has not filed an answer or any other responsive pleading at all, much less "within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1)(A)(i). Thus, the undersigned also finds that Bespoke failed to timely plead or otherwise respond to the complaint

under the Federal Rules of Civil Procedure.  *See id.*  The Clerk entered default on April 12, 2024, against Bespoke.  (Dkt. No. 12.)  Based on the foregoing, the Clerk's entry of default was appropriate.

## A.     Default judgment is procedurally proper.

Because default judgments are highly disfavored, the Court must ensure that Big Games has followed required procedures to be entitled to default judgment.  The Court's analysis is framed by the *Lindsey* factors.  *Lindsey*, 161 F.3d at 893.  As explained below, the *Lindsey* analysis supports default judgment in favor of Big Games.

First, there are no "material issues of fact in dispute," as Bespoke failed to answer the complaint or otherwise appear before the Court or place any factual allegations is dispute.  Second, Bespoke's refusal to engage in the litigation process threatens to prejudice Big Games's rights.  Nothing indicates that Bespoke would be unfairly prejudiced by default judgment considering it has chosen not to contest Big Games's allegations in the complaint.  Third, the grounds for default are clearly established given that Big Games served Bespoke with the complaint and summons, and Bespoke failed to answer despite being warned that failure to do so could result in default judgment.  Fourth, there is no evidence before the Court to suggest that Bespoke's silence is the result of a "good faith mistake or excusable neglect."  Fifth, considering every other factor from *Lindsey* favors default judgment, the Court is not aware of any facts that would obligate the Court to set aside the default if challenged by Bespoke.  *See Lindsey*, 161 F.3d at 893.

9

Because Bespoke is a limited liability company, it cannot be a minor or in military service. *See GS Holistics v. OMS Investment, LLC*, No. 3:23-CV-1024-L, 2024 WL 3092445, at *2 (N.D. Tex. June 21, 2024). (*See* Dkt. 18-3.) Big Games seeks relief under a federal statute creating a cause of action, *see* 17 U.S.C. § 501 *et seq.*, so it has established that the Court has jurisdiction. *See* 28 U.S.C. § 1331.

## B.    Default judgment is substantively proper.

Default judgments must be warranted procedurally and substantively. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206. Where, as here, a default has been entered under Rule 55, "the factual allegations of the complaint are taken as true." *Pathway Senior Living LLC v. Pathways Senior Living LLC*, No. 3:15-CV-02607-M, 2016 WL 1059536, at *2 (N.D. Tex. Mar. 17, 2016). Bespoke, by its default, is deemed to have admitted the well-pleaded factual allegations in the complaint. *Nishimatsu Constr. Co.*, 515 F.2d at 1206 (citing *Ohio Cent. R.R. Co. v. Cent Trust Co. of N.Y.*, 133 U.S. 83 (1889)). A default judgment is unassailable on the merits but only as to the well-pleaded allegations that are presumed to be true. *Id.* As such, the Court must review the pleadings to determine whether they provide a sufficient basis for Big Games's claim for relief. *Id.*

In conducting this analysis, courts look to the pleading requirements set out in Rule 8(a)(2). *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497 (5th Cir. 2015). Factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quoting *Bell Atl. Corp. v. Twombly*,

10

550 U.S. 544, 555 (2007)). The pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but "detailed factual allegations" are not required. *Wooten*, 788 F.3d at 497 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

This "low threshold" is less rigorous than under Rule 12(b)(6). *See Wooten*, 788 F.3d at 498 & n.3. Recognizing that "a defendant ordinarily must invoke Rule 12 in order to avail itself of that Rule's protections, [while] a default is the product of a defendant's inaction," the Fifth Circuit has "decline[d] to import Rule 12 standards into the default-judgment context." *Id.* at 498 n.3.

To prevail on a copyright infringement claim, a plaintiff must prove three elements: (1) ownership of a valid copyright, (2) factual copying, and (3) substantial similarity. *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007). "A certificate of registration, if timely obtained, is prima facie evidence both that a copyright is valid and that the registrant owns the copyright." *DaVinci Editrice S.R.L. v. ZiKo Games, LLC*, 183 F. Supp. 3d 820, 829 (S.D. Tex. 2016) (quoting *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004)).

A plaintiff may prove factual copying either by direct or circumstantial evidence. *See Batiste v. Lewis*, 976 F.3d 493, 502 (5th Cir. 2020). "To make out a circumstantial claim, a plaintiff must show that (1) the defendant had access to the copyrighted work before creation of the infringing work and (2) the works contain similarities that are probative of copying." *Armour*, 512 F.3d at 152. "A plaintiff can show probative similarity by pointing to any similarities between the two works,

11

even as to unprotectable elements, that, in the normal course of events, would not be expected to arise independently." *Batiste*, 976 F.3d at 502 (internal quotation marks omitted).

Once factual similarity is shown, the plaintiff then must show that the "copying is legally actionable by showing 'that the allegedly infringing work is substantially similar to protectable elements of the infringed work.'" *Id.* (quoting *Gen. Universal Sys., Inc.*, 379 F.3d at 142).  Doing so typically "requires a side-by-side comparison of the works' protectable elements to determine whether a layman would view the two works as substantially similar." *Id.* (internal quotation marks omitted). "Substantiality is measured by considering qualitative and quantitative importance of the copied material to the plaintiff's work as a whole." *Id.* (internal quotation marks omitted).

Big Games alleged in its complaint the facts necessary to establish a claim for copyright infringement.  First, it alleged and provided proof that it owns the certificate for the Lamb copyright.  (Compl. ¶¶ 37-42; Dkt. No. 18-4 at 5.)  Second, it alleged that Bespoke, after having had access to the Lamb character and without Big Games's authorization, published on its website derivative works based on the Lamb character and advertised for sale plushy stuffed animals based on that copyrighted work.  (Compl. ¶¶ 45-49.)  Additionally, Bespoke's post advertised the plushy as having no code or companion, signaling its awareness that buyers could confuse the item for one sold by Big Games.  These allegations establish Bespoke's liability for copyright infringement.

12

**C.    Big Games is entitled to statutory damages.**

Upon proof of infringement, 17 U.S.C. § 504 authorizes a copyright owner to recover either actual damages and the infringer's profits or statutory damages.  17 U.S.C. § 504(a).  Statutory damages are available only if the owner registered the copyright prior to the infringing conduct.  *Id.* § 412.  Statutory damages for infringement are capped at $30,000, but that limit increases to $150,000 when a plaintiff shows that the infringement was committed willfully.  *Id.* § 504(c)(1), (2).  "A defendant acts 'willfully' within the meaning of § 504(c)(2) . . . if he knows his actions constitute an infringement; the actions need not be malicious."  *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988).

Big Games's allegations and supporting material sufficiently demonstrate that Bespoke engaged in willful infringement.  Big Games obtained the Lamb copyright in August 2023, which was retroactively made effective in July 2023.  (Compl. ¶ 41; Dkt. No. 18-4 at 5.)  Big Games alleges that it warned Bespoke not to sell the products it had created because doing so would constitute copyright infringement.  (Compl. ¶ 26.)  And once Big Games learned that Bespoke was selling its Lamb plushy, Big Games had Shopify remove the ad.  (*Id.* ¶ 32; Dkt. No. 18-4 at 2.)  But Bespoke had the ad reinstated by stating under oath that the item's removal was the result of mistake or misidentification, which was not true.  (Compl. ¶¶ 34-35; Dkt. No. 18-4 at 2.)  Although Bespoke had notice that its advertisement and sale of the Lamb plushy violated the owner's copyright, the advertisement was reinstated

online.  (Compl. ¶ 35-36; Dkt. No. 18-4 at 2.)  The undersigned finds that this

sufficiently shows that Bespoke willfully infringed Big Games's copyright.

Because Big Games is seeking only statutory damages, the Court need not

hold a hearing to determine the amount of actual damages.  *See DISH Network L.L.C.*

*v. Khalid*, No. H-19-4563, 2021 WL 765709, at *5 (S.D. Tex. Feb. 23, 2021).  "Courts

enjoy broad discretion in awarding damages within" the statutory this range.  *Future*

*World Electronics, LLC v. Over Drive Marketing, LLC*, No. 3:12-CV-2124-B, 2013 WL

5925089, at *4 (N.D. Tex. Nov. 5, 2013).   In determining the amount of statutory

damages for copyright infringement, "courts have considered factors such as: the

willfulness of the defendant's conduct, the deterrent effect of an award on both the

defendant and others, the value of the copyright, whether defendant has cooperated

in providing necessary records to assess the value of the infringing material, and the

losses sustained by the plaintiff."  *DISH Network L.L.C.*, 2021 WL 765709, at *6; *see*

*also Future World Electronics, LLC*, 2013 WL 5925089, at *4.

Big Games requests the maximum allowable damage award for willful

infringement, $150,000.  (Mot. at 5.)  It does not submit any estimate of its loss or

Bespoke's profit, nor does it make a strong push to justify the maximum award

allowed by law based on particular facts of this case.  *Cf. Future World Electronics,*

*LLC*, 2013 WL 5925089, at *4 (basing plaintiff's statutory award request on estimates

of infringer's profits and avoided costs).  Based on the evidence submitted in this

case, the undersigned does not believe Big Games has justified the statutory

maximum.  Bespoke acted willfully, which undoubtedly calls for an enhanced

damages award.  And Bespoke's misrepresentation that enabled it to revive its online ad and continue the infringing conduct elevates the egregiousness of its conduct. Even so, the submitted evidence shows that Bespoke advertised 25 infringing items for sale at $59.99 apiece.  (Dkt. No. 18-4 at 10.)  The undersigned is unable to conclude in this circumstance that a statutory award amounting to $150,000 per copyright infringed or $6,000 per infringing item is appropriate here.

Cases involving comparable products and willful infringement corroborate that the statutory maximum award would be excessive in this case.  For example, in *Cawthon v. Yongchunhengyuanmaoyiyouxiangongsi*, No. 22-CV-5059, 2024 WL 4716232 (S.D.N.Y. Oct. 29, 2024), the creator of video games and novels obtained default judgment against a defendant that sold plush toys depicting characters the plaintiff created and for which he owned copyrights.  The defendant infringed two of the copyrighted characters.  *Id.* at *1.  Considering other cases involving "copyright owners [that] sued foreign infringers . . . for making and selling knock-off toy products through internet platforms," the court noted that damages typically ranged from $25,000 to $50,000 per infringer or per copyright infringed.  *Id.* at *7 (collecting cases).  It imposed a damages award of $50,000—or $25,000 per copyright infringed. *Id.*

Considering the evidence submitted here, the undersigned finds that a statutory damage award of $55,000 sufficiently balances the restorative and deterrent values encompassed in a statutory award, taking into account the particular degree of

15

willfulness exhibited.  In its motion, Big Games has neither requested nor proved costs or attorneys fees and does not seek injunctive relief.

## IV. CONCLUSION

For reasons discussed, the undersigned **RECOMMENDS** that Big Games's motion for default judgment (Dkt. No. 18.) be **GRANTED**, and **DEFAULT JUDGMENT** be **ENTERED** in favor of Big Games Management, LLC against Bespoke Plush, LLC.  The undersigned **FURTHER RECOMMENDS** the Court **AWARD** Big Games **$55,000** in statutory damages.

**SO RECOMMENDED** on January 13, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

16

## <u>NOTICE OF RIGHT TO OBJECT</u>

A copy of these findings, conclusions, and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).